UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYNE Y. SOHN, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | Case No. 22-cv-00385-PCP<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT & DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

This is a quiet title action regarding the validity of a federal tax lien placed on a residential property in Saratoga, California. Jeffrey T. Yu and plaintiff Olivia L. Yu transferred that property into a Qualified Personal Residence Trust (QPRT) in 1996. Nominal title to the property, however, was subsequently transferred back to the Yus on various occasions. After Jeffrey Yu incurred a substantial tax debt, the federal government placed a lien on the residential property at a time when nominal title to the property was held by the Yus rather than by the trust. The validity of the lien depends upon whether the property was at that time owned by the Yus (in which case it is valid) or by the trust (in which case it is invalid).

Now before the Court are cross-motions for summary judgment by plaintiffs Carolyne Y. Sohn, Olivia L. Yu, Alan B. Yu, and Hobin Sohn and by defendant United States of America. For the following reasons, the Court grants the United States of America's motion for summary judgment and denies the plaintiffs' cross motion for summary judgment.

## BACKGROUND

### A.   Statutory & Regulatory Background

A Qualified Personal Residence Trust (QPRT) is a trust established under federal law. A QPRT "provides a tax savings mechanism" and serves as "an effective estate planning technique

to transfer a personal residence at a reduced gift and estate tax cost from one generation to another." *In re Ferrante*, No. AP 8:12-01330-TA, 2015 WL 5064087, at *1 (B.A.P. 9th Cir. Aug. 26, 2015) (citing Jon D. Lallo, *Qualified Personal Residence Trusts: An Estate Planning Fad Gone Bad?*, 46 R.I.B.J. 17 (Jan. 1998)).

To qualify as a QPRT, a trust must comply with the requirements set forth in Treas. Reg. § 25.2702-5(c). To establish a QPRT, the grantor or "term holder" of a QPRT must transfer their personal residence to the trust. Treas. Reg. § 25.2702-5(c)(2)(i). "A residence is a personal residence only if its primary use is as a residence of the term holder when occupied by the term holder." *Id.* § 25.2702-5(c)(2)(iii). "A residence is not a personal residence if, during any period not occupied by the term holder, its primary use is other than as a residence." *Id.*

The governing instrument for a QPRT must require "any income of the trust be distributed to the term holder not less frequently than annually." *Id.* § 25.2702-5(c)(3). It must "prohibit distributions of corpus to any beneficiary other than the transferor prior to the expiration of the retained term interest." *Id.* § 25.2702-5(c)(4). With limited exception, it "must prohibit the trust from holding, for the entire term of the trust, any asset other than one residence to be used or held for use … as a personal residence of the term holder." *Id.* § 25.2702-5(c)(5). It must also "prohibit commutation (prepayment) of the term holder's instrument," *id.* 25.2702-5(c)(6), and "provide that a trust ceases to be a qualified personal residence trust if the residence ceases to be used or held for use as a personal residence of the term holder," *id.* § 25.2702-5(c)(7). "[W]ithin 30 days after the date on which the trust has ceased to be a qualified personal residence trust with respect to certain assets," the instrument must specify that "either … (A) The assets be distributed outright to the term holder; [or] (B) The assets be converted to and held for the balance of the term holder's term in a separate share of the trust meeting the requirements of a qualified annuity interest." *Id.* § 25.2702-5(c)(8)(i). The terms of the instrument must "continue in effect during the existence of any term interest in the trust." *Id.* § 25.2702-5(c).

On December 23, 1997, these regulations were amended to add Treasury Regulation §§ 25.2702-5(c)(9) and 25.2702-5(a)(2). *See* 62 Fed. Reg. 66988 (Dec. 23, 1997). The amendments prohibit buy-backs by requiring that the governing instrument:

> prohibit the trust from selling or transferring the residence, directly or indirectly, to the grantor, the grantor's spouse, or an entity controlled by the grantor or the grantor's spouse during the retained term interest of the trust, or at any time after the retained term interest that the trust is a grantor trust. For purposes of the preceding sentence, a sale or transfer to another grantor trust of the grantor or the grantor's spouse is considered a sale or transfer to the grantor or the grantor's spouse.

Treas. Reg. § 25.2702-5(c)(9).

Treasury Regulation 25.2702-5(a)(2) provided a process through which existing QPRTs that had buy-back provisions prior to the amendments could be modified and brought into compliance. This provision provided that any "trust that does not comply with one or more of the regulatory requirements under paragraph (b) or (c)" of Section 25.2702-5 "will, nonetheless, be treated as satisfying these requirements if the trust is modified, by judicial reformation (or nonjudicial reformation if effective under state law), to comply with the requirements." *Id.* § 25.2702-5(a)(2). "In the case of a trust created before January 1, 1997, the reformation [had to] be commenced within 90 days after December 23, 1997 and [had to] be completed within a reasonable time after commencement." *Id.*

### B.  Facts

In March 1996, Jeffrey T, Yu and Oliva L. Yu purchased a residential property located at 20932 Sarahills Drive, Saratoga, California.[1] On March 21, 1996, Jeffrey T. Yu and Olivia L. Yu, as husband and wife, formed the Yu Personal Residence Trust and transferred the Sarahills Drive Property to the Yu Personal Residence Trust. The Trust Agreement designated Mr. and Ms. Yu as the Trustors and Trustees. The Agreement provided that the Yus, as Trustors

> intend by this trust to make a completed gift to their children, CAROLYNE L. YU and ALAN B. YU, of a vested remainder in the trust assets, subject only to the Trustors' retention of a right to the use of and the income from the trust for twenty-five (25) years, a contingent revisionary interest, a contingent annuity interest, and a limited right to substitute trust assets. The Trustors intend that, except as may be provided expressly herein, their interest in this trust shall give them only those rights which are ordinarily associated with such interests, and no rights inconsistent therewith.

Third Amended Complaint (TAC), Ex. 1 (Trust Agreement), Dkt. No. 42-1, at 2. The Trust

---

[1] The facts set forth herein are based on the undisputed evidence submitted by the parties in the summary judgment briefing.

3

Agreement further provided:

> The Trustors intend that this trust constitute a Qualified Personal Residence Trust pursuant to the Treasury Regulations Section 25.2702-5(c) and Section 2702(b) of the Internal Revenue Code of 1986, as amended ("the Code"), and all terms used herein shall have the same meaning in this instrument as they do in the Code and the said regulations.

*Id.* Article II of the Trust Agreement included an irrevocability provision that states in full: "This trust and all interests in it are irrevocable, and the Trustors have no power to alter, amend, revoke or terminate any trust provision or interest, whether under this instrument or any statute or rule of law." *Id.*

The Trust Agreement also included a buy-back provision. Specifically, Section III.A.5 provided:

> Reacquisition by Trustors. The Trustors shall have the power, exercisable in a nonfiduciary capacity (either personally or by an attorney-in-fact under a power of attorney expressly referring to this power) without the consent or approval of any person or entity in a fiduciary capacity, to reacquire the Residence by substituting other property of equivalent value. No fiduciary duty of the Trustee shall be asserted by the Trustee as a defense to the exercise of this power.

*Id*. at 6. The Yus never reformed the Trust to remove this provision.

The Trust Agreement provided that the trust "shall terminate only as provided" in Section III.B: (1) "on the twenty fifth (25th) anniversary of the date of this instrument, if the Trustors are then-living," (2) "on the death of a Trustor before the twenty-fifth anniversary of the date of this instrument," or (3) if the trust "cease[s] to be a Qualified Personal Residence Trust … on the following dates and to the following extent:"

> 3.1 With respect to the entire trust fund, on the date that the trust first owns any property other than one (1) personal residence of the Trustors and such incidental amounts of cash and casualty insurance otherwise permissible under item III(A)(4), regardless of the reason for such trust ownership.
>
> 3.2. With respect to those proceeds of the sale of the Residence, the earliest of the date two (2) years after the date on which the trust sells the Residence, the date on which the Trustors' interest in the trust terminates, or (to the extent required under applicable rules and regulations of the U.S. Department of the Treasury), the date on which a new residence is bought by the Trustee.

4

> 3.3. With respect to those proceeds of the involuntary conversion of the Residence to the extent that the said conversion renders the residence unusable as a residence, the earliest of the date two (2) years after the date of such involuntary conversion, the date on which the Trustors' interest in the trust terminates, or (to the extent required under applicable rules and regulations of the U.S. Department of the Treasury), the date on which replacement of or repairs to the residence are completed or a new replacement residence is acquired by the trust.

Trust Agreement, at 7–8. "The date on which the Residence is sold by the Trustee, the date of the involuntary conversion of the Residence, or the date on which the residence ceases to be used or held for use as a personal residence" was designated as "the 'Cessation Date.'" *Id.* at 8. Section III.C. of the Trust Agreement mandated that "[w]ithin thirty (30) days from the Cessation Date, the Trustee shall convert the trust to a Grantor Retained Annuity Trust ('GRAT'). The date of such conversion [was] referred to as the 'Conversion Date.'" *Id.*

In February 1998, record to the Sarahills Drive Property was transferred from "Jeffrey T. Yu and Olivia L. Yu Trustees of the Yu Personal Residence Trust, dated March 21, 1996 or the successor Trustee(s)" to "Jeffrey T. Yu and Olivia L. Yu, husband and wife as Joint Tenants." In April 1998, the Sarahills Drive Property was transferred back to the Yu Personal Residence Trust. It remained in the name of the Yu Personal Residence Trust until the Yus transferred the property back into their own names in April 2004. The Yus, as individuals, held nominal title to the Sarahills Drive Property from April 2004 through January 2023.

The Internal Revenue Service subsequently determined that Mr. Yu had failed to comply with filing requirements with respect to certain foreign entities. *See* 26 U.S.C. §§ 6038, 6048. The IRS consequently assessed Mr. Yu $4,443,805.38 in unpaid penalties and interest for tax years 1997 through 2004. Because Mr. Yu did not pay the amount owed, federal tax liens were placed upon Mr. Yu's property in May and June 2014. In January and February 2016, the IRS recorded Notices of Federal Tax Liens (NFTL) with the relevant recording office in Santa Clara County, California.

On January 20, 2022, the plaintiffs commenced this action to quiet title to both the Sarahills Drive Property and two others. The United States has since disclaimed any interest in any property other than the Sarahills Drive Property. Plaintiffs Olivia L. Yu, as Trustee of the Yu Personal Residence Trust and in her individual capacity, Carolyne Y. Sohn, as Trustee of the Sohn

5

Family Trust dated 1/13/2020, Hobin Sohn as Trustee of the Sohn Family Trust dated 1/13/2020, and Alan B. Yu, as an individual, now seek a judgment quieting title to the Sarahills Drive Property and declaring that the United States has no interest therein. The United States has counterclaimed, seeking an order that it is entitled to foreclose its tax liens on the Sarahills Drive Property and a determination that the Yu Personal Residence Trust is not a QPRT under 26 U.S.C. § 2702 and Treas. Reg. § 25.2702-5.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where cases involve disputes of law rather than fact the Court simply decides the legal issues. *See N. Cal. River Watch v. Wilcox*, 633 F.3d 766, 772 (9th Cir. 2011); *Alcaraz v. Block*, 746 F.2d 593, 602–03 (9th Cir. 1984). In order to establish a factual dispute, the nonmoving party must cite to relevant evidence or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party bears the burden of demonstrating that there is no genuine factual dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "It is well-settled in this circuit and others that the filing of cross-motions for summary judgment … does not vitiate the court's responsibility to determine whether disputed issues of material fact are present. A summary judgment cannot be granted if a genuine issue as to any material fact exists." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)).

# ANALYSIS

## A. The Yu Personal Residence Trust Is No Longer a Qualified Personal Residence Trust.

The United States seeks a determination that the Yu Personal Residence Trust is not a valid QPRT. A QPRT "is a trust meeting all the requirements of … paragraph (c). These requirements must be met by provisions in the governing instrument, and these governing instrument provisions must by their terms continue in effect during the existence of any term interest in the trust." Treas. Reg. § 25.2702-5(c). Section 25.2702-5(c)(9) provides:

> [t]he governing instrument must prohibit the trust from selling or transferring the residence, directly or indirectly, to the grantor, the grantor's spouse, or an entity controlled by the grantor or the grantor's spouse during the retained term interest of the trust, or at any time after the retained term interest that the trust is a grantor trust.

The regulations make a narrow exception for trusts that otherwise do not meet the regulatory requirements to be treated as such if they were timely "modified, by judicial reformation (or nonjudicial reformation if effective under state law), to comply with the requirements." Treas. Reg. § 25.2702-5(a)(2).

The United States makes two arguments to support its position that the Yu Personal Residence Trust is no longer a QPRT. First, it argues that the Yus' failure to modify the trust to eliminate the buy-back provision prohibited by the December 23, 1997 amendments to the regulations invalidated the QPRT. In support, it relies on a strict reading of the regulations and points to the Ninth Circuit Bankruptcy Appellate Panel's opinion in *In re Ferrante*, Nos. CC-14-1222, CC-14-1223, 2015 WL 5064087 (BAP 9th Cir. Aug 26, 2015). Second, the United States argues that the Yus' transfer of the Sarahills Drive Property to themselves invalidated the QPRT.

In response, the plaintiffs argue that "the Treasury Regulation cited by the United States does not contain any provisions indicating that the trust is invalidated if it fails to abide by these regulations." Dkt. No. 54, at 18. Specifically, they assert that Treas. Reg. § 25.2702-5 "leaves open the question, did the YPRT continue to exist as an irrevocable trust albeit not a QPRT?" because the drafters did not include "language regarding what specifically happens if a trust is not amended in accordance with the applicable regulations." Dkt. No. 64, at 3–4.

7

It is undisputed that the Yu Personal Residence Trust is dated March 21, 1996 and that the Yus did not modify the Yu Personal Residence Trust after Treas. Reg. § 25.2702-5 was amended. Dkt. No. 57, at 5. It is also undisputed that the Yus transferred the Sarahills Drive Property to themselves in both 1998 and 2004. *Id.* A strict reading of the regulations makes clear that the Yu Personal Residence Trust does not meet the definition of a QPRT. Section 25.2702-5(c) explicitly states that a QPRT "is a trust meeting all the requirements of this paragraph." Because the Trust Agreement not only fails to prohibit buy-backs, as required by Section 25.27025(c)(9) clause, but also contains a buy-back provision specifically prohibited by that provision, the Yu Personal Residence Trust does not meet "all" the requirements under the paragraph. Therefore, it does not qualify as a QPRT.

The Court agrees with the reasoning of *In re Ferrante*. That decision involved an appeal of an order denying a motion to reconsider and certifying an order granting partial summary judgment on the ground that (1) "QPRTs are not irrevocable trusts, unlike spendthrift trusts, because a grantor can terminate QPRT status by ceasing to reside in the trust property," and (2) "once QPRT status was lost the trust terminated and all assets were to be distributed to [the Grantor]." 2015 WL 5064087, at *5. After a thorough analysis of the QPRT regulations and amendment history, the Panel held that the bankruptcy court did not err in concluding that the trust at issue terminated when it failed to comply with Treasury regulations and was no longer a QPRT. Like the Yu Personal Resident trust, that trust was initially established as a QPRT prior to January 1, 1997, included a buy-back provision, and was not modified after the Treasury amended the QPRT regulations on December 23, 1997. *See id.* at *9. The Panel concluded that "[b]ecause of this failure to modify the [trust] to eliminate the disqualifying language in paragraph III B.4 that is contrary to the third sentence of Treas. Reg. § 25.2702-5(b)(1), the [trust] does not comply with QPRT regulations and ceased to be a QPRT." *Id.* Like the Yu Personal Residence Trust, the trust provided that it would terminate when "it ceases to be a [QPRT], and on such termination the Trustee shall distribute all of the trust assets to the Grantor." *Id.* Like the Yu Personal Residence Trust, it provided that the trustee could elect to convert the trust to a Grantor Retained Annuity Trust, but the trustee never converted the trust. *Id.* "Thus, the [trust] terminated in 1998," and the

8

residence was properly treated as part of the debtor's estate. *Id.*

Because the Yu Personal Residence Trust neither meets "all of the requirements" of Section 25.2702-5(c)(9) nor was timely reformed pursuant to Section 25.2702-5(a)(2), it is no longer a QPRT.

### B. The United States Is Entitled To Foreclose on the Sarahills Drive Property.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount … shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. That lien arises on the date the tax is assessed and continues until the tax liability is satisfied or is no longer enforceable. 26 U.S.C. § 6322. There is no dispute that record title to the Sarahills Drive Property was held in the name of Jeffrey T. Yu and Olivia L. Yu of the Yu, as husband and wife as community property with right of survivorship, at the time the federal tax liens against Mr. Yu attached to the property.[2] The parties dispute, however, whether the Yu Personal Residence Trust or the Yus in their individual capacities had actual ownership of the property when the liens attached.

Whether an interest in property constitutes "'property and rights to property' for the purposes of the federal tax liens statute … is ultimately a question of federal law." *United States v. Craft*, 535 U.S. 274, 278 (2002). The answer to that question, however, "largely depends upon state law." *Id.* Courts therefore must "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Id.* (cleaned up). In looking to state law, courts

---

[2] Under California law, "the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt." Cal. Fam. Code § 910(a); *see In re McIntyre*, 222 F.3d 655, 658 (9th Cir. 2000) (holding that "by granting creditors recourse against the whole community estate on debts of only one spouse, California law 'implicitly' establishes that spouse's 'interest' in the whole of the community property, at least to a degree sufficient for the IRS to impose tax liens under the Internal Revenue Code"); *Babb v. Schmidt*, 496 F.2d 957, 960 (9th Cir. 1974). Plaintiffs do not dispute that, if the Sarahills Drive Property was owned by the Yus as community property when the liens were created, then the property was properly subject to those liens notwithstanding that the tax debt was solely Jeffrey Yu's.

"must be careful to consider the substance of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them." *Id.* at 279.

Because the Sarahills Drive Property was in the Yus' names—as husband and wife—at the time that the federal liens at issue arose and notices were recorded, the United States argues that the liens attached to the entire community property as prescribed by California law. The plaintiffs concede that "record title to the Sarahills Drive Property was held in the name of Jeffrey T. Yu and Olivia L Yu, Trustees of the Yu Personal Residence Trust, as husband and wife as community property with right of survivorship." Dkt. No. 54, at 16. Nonetheless, they assert that the Yu Personal Residence Trust remained the actual owner. They advance three arguments in support.

First, they invoke *Estate of Heggstad*, 16 Cal. App. 4th 943 (1993), for the proposition that the terms of the trust alone—not record title—determine actual ownership of the property. Dkt. No. 54, at 16–17. Second, they argue that Section 5.17.2.5.3.3. of the Internal Revenue Manual, which defines "irrevocable trust" as "one that the grantor/settlor cannot dissolve and cannot take the property back" from, is incompatible with and therefore "preclude[s]" the United States from now "claiming that the amounts owing by Jeffrey T. Yu individually can be satisfied by the Sarahills Drive Property." Third, they invoke *Laylock v. Hammer*, 141 Cal. App. 4th 25 (2006), for the proposition that a settlor's conduct does not alter the nature of an irrevocable trust. In that case, the Fourth District of the California Court of Appeals held that "a settlor's conduct after an irrevocable trust has been established will not alter the nature of such a trust." *Id.* at 31. The court noted that its conclusion "is consistent with federal tax cases that, applying a broader incidents of ownership test, have found that breaches of the terms of a trust by a settlor will not make the settlor the owner of trust property for purposes of applying the federal estate tax." *Id.*

There are two flaws in plaintiffs' arguments. First, California law presumes that the owner of legal title to property is the owner of full beneficial title. *See* Cal. Evid. Code § 662. While the parties dispute the legal consequence of transferring title from the Trust to the Yus, they do not dispute that the Sandhills Drive Property was titled in the Yus' names in their individual capacities when the liens arose. *Estate of Heggstad* is inapposite, as that case merely held that a written declaration of a settlor's intent to hold property in trust was sufficient to create a revocable trust,

10

and that the settlor was not *also* required to execute a separate deed conveying the property to the trust. 16 Cal. App. 4th at 947.

Second, and more fundamentally, the Yu Personal Residence Trust is a QPRT created by federal law, not an irrevocable trust created under California law. This is clear from the terms of the trust, which provide that "all terms used herein shall have the same meaning in this instrument as they do in … [Treasury Regulations Section 25.2702-5(c) and Section 2702(b) of the Internal Revenue] Code." Trust Agreement, at 2. Although the trust includes a declaration of purported irrevocability, the other terms of the trust conflict with that declaration. As the bankruptcy judge who issued the decision on review in *In re Ferrante* noted, the settlor of a QPRT retains the power to terminate the trust by ceasing to reside in the trust property. *In re Ferrante*, 2015 WL 5064087, at *5. The Yu Personal Residence Trust also permitted the Yus to repurchase the residence from the trust (in violation of the 1997 amendments). And while the terms of the trust required the trustee to convert the trust to a Grantor Retained Annuity Trust within 30 days of the date on which the trust ceased to be a QPRT—which occurred when the trust was not reformed in accordance with the 1997 amendments—the trustee never did so. *See id.* at *9 ("Because of this failure to modify the 518 Trust to eliminate the disqualifying language in paragraph III B.4. that is contrary to the third sentence of Treas. Reg. § 25.2702–5(b)(1), the 518 Trust does not comply with QPRT regulations and ceased to be a QPRT.").[3]

Given that the terms of the Yu Personal Residence Trust made the trust terminable under certain circumstances, including when it ceased to be a QPRT, plaintiffs cannot overcome the presumption under California law that when legal title to the Sarahills Drive Property was subsequently transferred from the trust to the Yus, that transfer validly transferred full beneficial title in the property to the Yus as their community property. Under California law, that community estate is liable for the debt of Mr. Yu. *See* Cal. Fam. Code § 910. Accordingly, the federal liens properly attached to that property. Because Mr. Yu has failed to satisfy the amount due, the United

---

[3] Plaintiffs' reliance on the Internal Revenue Manual is misplaced both because the Manual "does not have the force of law and does not confer rights on taxpayers," *Fargo v. Comm'r*, 447 F.3d 706, 713 (9th Cir. 2006), and because the cited provision merely defines the term irrevocable trust without purporting to address whether QPRTs fall within that category.

11

States is entitled to foreclose on the liens. *See* 26 U.S.C. § 6321.

## CONCLUSION

For the foregoing reasons, the Court grants the United States of America's motion for summary judgment and denies the plaintiffs' cross motion for summary judgment.

**IT IS SO ORDERED.**

Dated: March 18, 2024

P. Casey Pitts
United States District Judge

12